CLOSED, PHV

# U.S. District Court
## Western District of Missouri (Jefferson City)
## CIVIL DOCKET FOR CASE #: 2:04-cv-04184-NKL

**FILED**

Jones et al v. Harris Associates LP
Assigned to: District Judge Nanette K Laughrey
Demand: $100000
Cause: 28:1331 Fed. Question: Securities Violation

Date Filed: 08/16/2004
Jury Demand: None
Nature of Suit: 850 Securities/Commodities
Jurisdiction: Federal Question

DEC 2 8 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**Plaintiff**

**Jerry N. Jones**

represented by **Audrey B. Rauchway**
403 East Madison Street
Suite 400
Tampa, FL 33602
813-225-2500
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**DOCKETED**

DEC 3 0 2004

**Becky Ferrell-Anton**
Johnson, Pope, Bokor, Ruppel & Burns,
LLP
403 East Madison Stree
Suite 400
Tampa, FL 33602
(813) 225-2500
Fax: (813) 223-7118
Email: beckyf@jpfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Guy M. Burns**
Johnson, Pope, Bokor, Ruppel & Burns,
LLP
403 East Madison Street
Suite 400
Tampa, FL 33602
(813) 225-2500
Fax: (813) 223-7118
Email: guyb@jpfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James C Bradley**
Richardson, Patrick, Westbrook &
Brickman, LLC
174 East Bay Street
Suite 100
Charleston, SC 29401

(843)727-6500
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan S. Coleman**
Johnson, Pope, Bokor, Ruppel & Burns,
LLP
403 East Madison
Suite 400
Tampa, FL 33602
(813) 225-2500
Fax: (813) 223-7118
Email: jonathanc@jpfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J Brickman**
Richardson, Patrick, Westbrook &
Brickman LLC
174 East Bay Street
Suite 100
Charleston, NC 29401
(843) 727-6500
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nina H Fields**
Richardson, Patrick, Westbrook &
Brickman, LLC
174 East Bay Street
Suite 100
Charleston, NC 29401
(843) 727-6500
Fax: (843) 727-3103
Email: nfields@rpwb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wm Dirk Vandever**
The Popham Law Firm, PC
323 W. 8th Street
Suite 200
Kansas City, MO 64105
(816)221-2288
Fax: (816) 221-3999
Email: cwagner@pophamlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mary Frances Jones**                  represented by  **Audrey B. Rauchway**
                                        (See above for address)
                                        *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Becky Ferrell-Anton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Guy M. Burns**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James C Bradley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan S. Coleman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J Brickman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nina H Fields**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wm Dirk Vandever**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Olga Menyhart**                        represented by  **Audrey B. Rauchway**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Becky Ferrell-Anton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Guy M. Burns**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James C Bradley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan S. Coleman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J Brickman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nina H Fields**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wm Dirk Vandever**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Harris Associates LP**                    represented by    **John D. Donovan**
Ropes & Gray
One International Place
Boston, MA 02110-2624
617-951-7000
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Skinner**
Ropes & Gray
One International Place
Boston, MA 02110-2624
617-951-7000
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rosanne E. Felicello**
Ropes and Gray
One International Place
Boston, MA 02110-2624
(617) 951-7000
Fax: (617) 951-7050
Email: rfelicello@ropesgray.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Fred L. Sgroi**
Bryan Cave, LLP-KCMO
1200 Main Street
Suite 3500
Kansas City, MO 64105
(816) 391-7602
Fax: (816) 374-3300
Email: fred.sgroi@bryancave.com
*ATTORNEY TO BE NOTICED*

**Lynn S. McCreary**
Bryan Cave LLP
One Kansas City Place
1200 Main Street, Ste. 3500
Kansas City, MO 64105-2110
(816) 374-3200
Fax: (816) 374-3300
Email: lmccreary@bryancave.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/17/2004 | 1 | COMPLAINT against Harris Associates LP (Filing fee $ 150 receipt number 220674) Service due by 12/15/2004, filed by Wm Dirk Vandever on behalf of Jerry N. Jones. (Attachments: # 1 # 2)(Vandever, Wm) Modified on 8/20/2004 to reflect receipt of paper exhibits in JC Clerk's Office (Russel, Jeri). (Entered: 08/17/2004) |
| 08/27/2004 | | SUMMONS ISSUED as to Harris Associates LP. (Revis, Christi) (Entered: 08/27/2004) |
| 08/31/2004 | 2 | ORDER ON PRETRIAL PROCEDURES (Kanies, Renea) (Entered: 08/31/2004) |
| 09/02/2004 | 3 | RETURN OF SERVICE of complaint executed by Jerry N. Jones. Harris Associates LP served on 8/30/2004, answer due 9/20/2004. (Vandever, Wm) (Entered: 09/02/2004) |
| 09/20/2004 | 4 | MOTION for extension of time to file answer re 1 Complaint, filed by Lynn S. McCreary on behalf of Harris Associates LP Suggestions in opposition/response due by 10/5/2004 (Related document(s)1) (McCreary, Lynn) (Entered: 09/20/2004) |
| 09/23/2004 | 5 | ORDER by Judge Nanette Laughrey granting in part and denying in part 4 Motion for Extension of Time to Answer. Defendant Harris Associates L.P.'s answer or responsive pleading is due on or before October 11, 2004. (Text entry only - no document attached) (Kanies, Renea) (Entered: 09/23/2004) |
| 09/23/2004 | 6 | ORDER. Proposed scheduling order due by 10/25/2004, rule 26 conference due by 10/18/2004. (Kanies, Renea) (Entered: 09/23/2004) |
| 09/24/2004 | 7 | Motion and Order to appear pro hac vice granting appearance of Attorney John |

| | | |
|---|---|---|
| | | D. Donovan for Harris Associates LP Fee paid; receipt number 221416. (Revis, Christi) (Entered: 09/24/2004) |
| 09/24/2004 | 8 | Motion and Order to appear pro hac vice granting appearance of Attorney Robert A. Skinner for Harris Associates LP Fee paid; receipt number 221416. (Revis, Christi) (Entered: 09/24/2004) |
| 09/24/2004 | 9 | Motion and Order to appear pro hac vice granting appearance of Attorney Rosanne E. Felicello for Harris Associates LP Fee paid; receipt number 221416. (Revis, Christi) (Entered: 09/24/2004) |
| 09/27/2004 | 10 | Motion and Order to appear pro hac vice granting appearance of Attorney Michael J Brickman for Olga Menyhart; Jerry N. Jones and Mary Frances Jones Fee paid; receipt number 221445. (Revis, Christi) (Entered: 09/28/2004) |
| 09/27/2004 | 11 | Motion and Order to appear pro hac vice granting appearance of Attorney Nina H Fields for Olga Menyhart; Jerry N. Jones and Mary Frances Jones Fee paid; receipt number 221445. (Revis, Christi) (Entered: 09/28/2004) |
| 09/27/2004 | 12 | Motion and Order to appear pro hac vice granting appearance of Attorney James C Bradley for Olga Menyhart; Jerry N. Jones and Mary Frances Jones Fee paid; receipt number 221445. (Revis, Christi) (Entered: 09/28/2004) |
| 10/04/2004 | 13 | Motion and Order to appear pro hac vice granting appearance of Attorney Audrey B. Rauchway for Olga Menyhart; Jerry N. Jones and Mary Frances Jones Fee paid; receipt number 221551. (Revis, Christi) (Entered: 10/04/2004) |
| 10/04/2004 | 14 | Motion and Order to appear pro hac vice granting appearance of Attorney Guy M. Burns for Olga Menyhart; Jerry N. Jones and Mary Frances Jones Fee paid; receipt number 221551. (Revis, Christi) (Entered: 10/04/2004) |
| 10/04/2004 | 15 | Motion and Order to appear pro hac vice granting appearance of Attorney Becky Ferrell-Anton for Olga Menyhart; Jerry N. Jones and Mary Frances Jones Fee paid; receipt number 221551. (Revis, Christi) (Entered: 10/05/2004) |
| 10/04/2004 | 16 | Motion and Order to appear pro hac vice granting appearance of Attorney Jonathan S. Coleman for Olga Menyhart; Jerry N. Jones and Mary Frances Jones Fee paid; receipt number 221551. (Revis, Christi) (Entered: 10/05/2004) |
| 10/07/2004 | 17 | MOTION for order For Entry of Scheduling Order filed by Lynn S. McCreary on behalf of all defendants Suggestions in opposition/response due by 10/18/2004 and reply is due by 10/20/04(McCreary, Lynn) Modified on 10/7/2004 to reflect briefing schedule ordered this date(Kanies, Renea). (Entered: 10/07/2004) |
| 10/07/2004 | 18 | SUGGESTIONS in support re 17 MOTION for order For Entry of Scheduling Order filed by Lynn S. McCreary on behalf of Defendant Harris Associates LP. (Related document(s)17) (McCreary, Lynn) (Entered: 10/07/2004) |
| 10/07/2004 | 19 | ORDER by Judge Nanette Laughrey granting in part 17 Motion for Entry of Scheduling Order. Defendant shall file a motion to transfer the action to the Northern District of Illinois on or before October 11, 2004. Plaintiff's response is due on or before October 18, 2004, and Defendant's reply is due by October 20, 2004. The Defendant is granted an extension to November 1, 2004, to file a responsive pleading. (Text entry only - no document attached) (Kanies, Renea) (Entered: 10/07/2004) |
| | | |

| 10/08/2004 | 20 | DISCLOSURE OF CORPORATE INTERESTS *Pursuant to the Court's Order Dated September 23, 2004* filed by Lynn S. McCreary on behalf of Defendant Harris Associates LP.(McCreary, Lynn) (Entered: 10/08/2004) |
|---|---|---|
| 10/11/2004 | 21 | MOTION to reassign/transfer case *Defendant's Motion to Transfer Action to the Northern District of Illinois* filed by Lynn S. McCreary on behalf of Harris Associates LP Suggestions in opposition/response due by 10/18/2004*, Reply Due 10/20/2004 (McCreary, Lynn) Modified on 10/12/2004 to reflect briefing schedule as ordered by the Court on 10/7/2004 Doc. 19. (Kanies, Renea). (Entered: 10/11/2004) |
| 10/11/2004 | 22 | SUGGESTIONS in support re 21 MOTION to reassign/transfer case *Defendant's Motion to Transfer Action to the Northern District of Illinois Suggestions in Support of Defendant's Motion to Transfer Action to the Northern District of Illinois* filed by Lynn S. McCreary on behalf of Defendant Harris Associates LP. (Attachments: # 1 Exhibit A - Declaration of Ann W. Regan# 2 Exhibit B - Copy of Comlaint# 3 Exhibit C - Copy of Nelson v. AIM Decision# 4 Exhibit D - Notice of Order# 5 Exhibit E - Federal Court Management Statistics for 2003) (Related document(s)21) (McCreary, Lynn) (Entered: 10/11/2004) |
| 10/13/2004 | 23 | NOTICE of appearance by Fred L. Sgroi on behalf of Harris Associates LP (Sgroi, Fred) (Entered: 10/13/2004) |
| 10/18/2004 | 24 | SUGGESTIONS in opposition re 21 MOTION to reassign/transfer case *Defendant's Motion to Transfer Action to the Northern District of Illinois* filed by Becky Ferrell-Anton on behalf of Plaintiffs Jerry N. Jones, Mary Frances Jones, Olga Menyhart. Reply suggestions due by 11/2/2004 unless otherwise directed by the court (Attachments: # 1 Exhibit A - Part 1# 2 Exhibit A - Part 2# 3 Exhibit B# 4 Exhibit C)(Related document(s)21) (Ferrell-Anton, Becky) (Entered: 10/18/2004) |
| 10/20/2004 | 25 | REPLY SUGGESTIONS to motion re 21 MOTION to reassign/transfer case *Defendant's Motion to Transfer Action to the Northern District of Illinois* filed by Fred L. Sgroi on behalf of Defendant Harris Associates LP. (Attachments: # 1 Exhibit A - Order in Williams v. Waddell & Reed# 2 Exhibit B - Order in Fleisher v. Janus Capital)(Related document(s)21) (Sgroi, Fred) (Entered: 10/20/2004) |
| 10/26/2004 | 26 | CERTIFICATE OF SERVICE by all plaintiffs *for Rule 26 Initial Disclosures* filed by Becky Ferrell-Anton on behalf of Plaintiffs Jerry N. Jones, Mary Frances Jones, Olga Menyhart.(Ferrell-Anton, Becky) (Entered: 10/26/2004) |
| 10/26/2004 | 27 | CERTIFICATE OF SERVICE by all plaintiffs *First Request for Production Directed to Defendants* filed by Becky Ferrell-Anton on behalf of Plaintiffs Jerry N. Jones, Mary Frances Jones, Olga Menyhart.(Ferrell-Anton, Becky) (Entered: 10/26/2004) |
| 10/27/2004 | 28 | CERTIFICATE OF SERVICE OF INITIAL RULE 26 DISCLOSURES filed by Fred L. Sgroi on behalf of Defendant Harris Associates LP.(Sgroi, Fred) (Entered: 10/27/2004) |
| 10/28/2004 | 29 | PROPOSED SCHEDULING ORDER *(Joint) and Report of Parties Planning Meeting* by Jerry N. Jones, Mary Frances Jones, Olga Menyhart. (Vandever, Wm) (Entered: 10/28/2004) |
| 11/01/2004 | 30 | MOTION to dismiss case *Defendant's Motion to Dismiss* filed by Fred L. Sgroi |

| | | |
|---|---|---|
| | | on behalf of Harris Associates LP Suggestions in opposition/response due by 11/16/2004 unless otherwise directed by the court (Sgroi, Fred) (Entered: 11/01/2004) |
| 11/01/2004 | 31 | SUGGESTIONS in support re 30 MOTION to dismiss case *Defendant's Motion to Dismiss* filed by Fred L. Sgroi on behalf of Defendant Harris Associates LP. (Attachments: # 1 Affidavit Declaration of Robert A. Skinner# 2 Exhibit A to Declaration of Robert A. Skinner - Complaint# 3 Exhibit B to Declaration of Robert A. Skinner - Statement of Additional Information)(Related document(s) 30) (Sgroi, Fred) (Entered: 11/01/2004) |
| 11/16/2004 | 32 | SUGGESTIONS in opposition re 30 MOTION to dismiss case *Defendant's Motion to Dismiss* filed by Wm Dirk Vandever on behalf of Plaintiffs Jerry N. Jones, Mary Frances Jones, Olga Menyhart. Reply suggestions due by 12/1/2004 unless otherwise directed by the court (Attachments: # 1 Exhibit Exhibit A1# 2 Exhibit Exhibit A2# 3 Exhibit Exhibit B# 4 Exhibit Exhibit C# 5 Exhibit Exhibit D# 6 Exhibit Exhibit E# 7 Exhibit Exhibit F)(Related document(s)30) (Vandever, Wm) (Entered: 11/16/2004) |
| 11/29/2004 | 33 | CERTIFICATE OF SERVICE by Harris Associates LP *of its Response to Plaintiffs' First Request for Production of Documents* filed by Fred L. Sgroi on behalf of Defendant Harris Associates LP.(Sgroi, Fred) (Entered: 11/29/2004) |
| 12/01/2004 | 34 | REPLY SUGGESTIONS to motion re 30 MOTION to dismiss case *Defendant's Motion to Dismiss* filed by Lynn S. McCreary on behalf of Defendant Harris Associates LP. (Related document(s)30) (McCreary, Lynn) (Entered: 12/01/2004) |
| 12/03/2004 | 35 | NOTICE of change of address by Becky Ferrell-Anton (Ferrell-Anton, Becky) (Entered: 12/03/2004) |
| 12/21/2004 | 36 | ORDER by Judge Nanette Laughrey. Defendant's Motion to Transfer Venue [Doc. 21] is GRANTED. This case is transferred to the Northern District of Illinois for further proceedings. (Kanies, Renea) (Entered: 12/21/2004) |
| 12/22/2004 | | LETTER to Northern District of Illinois regarding transfer. Includes 21 day delay information. (James, Carrie) (Entered: 12/22/2004) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/29/2004 09:13:52 | | |
| PACER Login: | us3962 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:04-cv-04184-NKL |
| Billable Pages: | 5 | Cost: | 0.35 |



# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# OFFICE OF THE CLERK

PATRICIA L. BRUNE
CLERK OF COURT

Reply To:
US Courthouse
131 West High Street
Jefferson City, MO  65101

December 22, 2004

**04C 8305**

**JUDGE KOCORAS**

**MAGISTRATE JUDGE LEVIN**

Mr. Michael Dobbins, Clerk
United States District Court
Everett McKinley Dirksen building
Chicago, IL 60604

RE:  Transfer of Western District of Missouri Case No.04-4184-CV-C-NKL

Dear Clerk:

On  December 21, 2004, this court electronically filed an order transferring the above case to your court.  Our Administrative Directive 11 requires that the actual transfer of this case be delayed for twenty-one days following the docketing of the order of transfer.  The twenty-one days expires on January 11, 2005,  and the documents may be accessed electronically at that time.  However, we are attaching a certified copy of the transfer order along with this letter.

Our court permits, by General Order, electronic filing of documents.  Our General Order authorizes the use of a login and password in lieu of a signature on documents.  Since this is an electronic case file, the documents which would have been transmitted to you in paper can be found at this web address: **ecf.mowd.uscourts.gov.**

If you have any questions or problems obtaining these records, please feel free to contact me at (573) 636-4015.

Sincerely,

Patricia L. Brune, Clerk of Court

By:____C. James_____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

04C 8305

JERRY N. JONES, et al.,           )
                                  )
            Plaintiffs,           )
                                  )
     v.                           )    Case No. 04-04184-CV-C-NKL
                                  )
HARRIS ASSOCIATES L.P.,           )
                                  )                    JUDGE KOCORAS
            Defendant.            )

                                       MAGISTRATE JUDGE LEVIN

## ORDER

Defendant Harris Associates L.P. ("Harris") has filed a Motion to Transfer Venue [Doc. 21], as well as a Motion to Dismiss [Doc. 30]. For the reasons stated below, the Motion to Transfer will be granted, and the Court will not rule on the Motion to Dismiss.

The Plaintiffs are shareholders in certain mutual funds managed by Harris. In addition to managing the funds, Harris provides administrative and investment advisory services to the Plaintiffs, in exchange for a fee based on a percentage of the net assets of all the funds in its "Fund Complex," of which Plaintiffs' funds are a part. The Plaintiffs allege that Harris has breached its fiduciary duties toward the Plaintiffs by charging excessive fees for its services, and by retaining excessive profits derived from economies of scale. Specifically, the Plaintiffs allege that Harris has increased its fees as a percentage of Fund Complex assets over the past decade, when it should have decreased its fees to reflect the economies of scale achieved by extraordinary net asset growth

1

I HEREBY ATTEST AND CERTIFY ON 12-22-04
THAT THE FOREGOING DOCUMENT IS A FULL, TRUE AND
CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE
AND IN MY LEGAL CUSTODY.

L. BRUNE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

DEPUTY

36

during that period. The Plaintiffs have filed a derivative action pursuant to section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b).

Harris, a Delaware limited partnership, requests the Court to transfer this action to the Northern District of Illinois, where it has its principal place of business. The Court is authorized to "transfer any civil action to any other district or division where it might have been brought" "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). Although the Plaintiffs, two of whom are Missouri residents who reside in the Central Division,[1] do not dispute that the action could have been brought in the Northern District of Illinois, the Plaintiffs argue that transfer of the action would be inappropriate under section 1404(a).

"The statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). In addition, courts must consider other factors relevant to the circumstances specific to the case at hand. *Id.*

After considering the circumstances particular to this case, the Court finds that allowing the action to proceed in the Western District of Missouri would significantly inconvenience the parties and witnesses, and would not promote the interests of justice. It is undisputed that nearly all of the documents relevant to the issues in this case are located in the Northern District of Illinois. It is also undisputed that nearly all of the potential

---

[1]The other plaintiff is a Florida resident.

witnesses are located there, including the trustees of the mutual funds who approved the challenged fee arrangements and the Harris officers and employees who provided managerial and administrative services for the funds. Harris has identified eleven such witnesses who have knowledge of the issues of this case, none of whom are located in Missouri. Whether they be treated as parties or witnesses, as a practical matter, these individuals who have relevant information are all located in Chicago and, therefore, it would be more convenient for the case to be heard in the Northern District of Illinois.

The Court recognizes that Plaintiffs Jerry and Mary Jones, who are residents of Missouri, would suffer some inconvenience if required to prosecute this action in Illinois. However, the Plaintiffs have not challenged Harris's assertion that their personal involvement in this case will be minimal. Unlike Harris's employees, who have direct knowledge of the central issues in this case, the Plaintiffs' knowledge of the relevant issues is limited to their purchase of mutual funds and the damages they allegedly suffered as a result of that purchase. Therefore, the Plaintiffs will probably not be required to undergo lengthy depositions, and their required participation at trial will likely be minimal.[2]

This situation is common in derivative suits, where plaintiffs' only relationship to the lawsuit is the mere fact that they purchased the securities at issue. For that reason, "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)

---

[2]In addition, Harris has offered to take Plaintiffs' depositions in Missouri. (Harris Suggestions in Support [Doc. 22], p. 9.)

(finding that transfer was proper in a derivative suit, in part because the majority of the witnesses lived and worked in the transferee state).

Having reviewed other cases involving section 36(b) of the Investment Company Act of 1940, as well as shareholder derivative disputes, the Court concludes that *Belzberg* accurately reflects the weight of authority on this issue. *Lewis v. C.R.I., Inc.*, 2003 WL 1900859 (S.D.N.Y. 2003); *Nelson v. Aim Advisors, Inc.*, 2002 WL 442189, 4 (S.D. Ill. 2002); *Roy v. Alliance Capital Management, L.P.*, 2002 WL 32657085, *3 (M.D.Fla. 2002); *Abramson v. INA Capital Management Corp.*, 459 F. Supp. 917, 923 (E.D.N.Y. 1978); *In re Nematron Corp. Securities Litigation*, 30 F. Supp. 2d 397 (S.D.N.Y. 1998); *Guenther v. Cooper Life Sciences, Inc.*, 1988 WL 131340 (D. Minn. 1988); *Eichenholtz v. Brennan*, 677 F. Supp. 198 (S.D.N.Y. 1988); *Stanley v. Carret*, 1971 WL 244 (S.D.N.Y. Feb. 16, 1971) (transferring a derivative suit alleging violation of the ICA, including excessive advisory fees, from the Southern District of New York to the District of Massachusetts); *cf. Miller v. Mitchell Hutchins Asset*, No. 01-CV-0192-DRH (S.D. Ill. Nov. 9, 2001) (order denying motion to transfer); *see also Ackert v. Ausman*, 198 F. Supp. 538 (S.D.N.Y. 1961) (transferring a derivative and representative claim brought under the ICA for violation of fiduciary duty from the Southern District of New York to the District of Minnesota).

The Court concludes that the relevant factors significantly weigh in favor of transfer to the Northern District of Illinois.

Accordingly, it is hereby

4

ORDERED that Defendant's Motion to Transfer Venue [Doc. 21] is GRANTED.

This case is transferred to the Northern District of Illinois for further proceedings.


s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: December 21, 2004
Jefferson City, Missouri

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

JERRY N. JONES, MARY FRANCES )
JONES, and OLGA MENYHART, )
　 )
　Plaintiffs, )
　 ) 04-4184-CV- C.NKL
　 )
　v. ) Case No:_____
　 )
HARRIS ASSOCIATES L.P., )
　 )
　Defendant. )

## COMPLAINT

Plaintiffs, Jerry N. Jones, Mary Frances Jones, and Olga Menyhart for the use and benefit

of the Oakmark Fund, the Oakmark Equity and Income Fund, the Oakmark Global Fund, and the

Oakmark International Fund, sue Defendant, Harris Associates L.P., and allege:

## I. JURISDICTION AND VENUE

1.　　This action is a derivative action brought by Plaintiffs on behalf of the Oakmark

Fund, the Oakmark Equity and Income Fund, the Oakmark Global Fund, and the Oakmark

International Fund (collectively, the "Funds") pursuant to §§ 36(b) of the Investment Company

Act of 1940 ("ICA"), as amended, 15 U.S.C. §§ 80a-35(b).

2.　　This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 80a-43, 15

U.S.C. § 80a-35(b)(5), and 28 U.S.C. § 1331.

3.　　Venue is proper in this judicial district pursuant to 15 U.S.C. § 80a-43 and 28

U.S.C. § 1391(b). Defendant is an inhabitant of or transacts business in this district, Defendant

resides in this district, a substantial part of the events or omissions that give rise to Plaintiffs'

claims occurred in this district, and/or Defendant may be found in this district.

4.    All conditions precedent have been performed or have occurred.

## II. BACKGROUND

5.    Plaintiffs are shareholders in the Funds, which are open-end registered investment companies,[1] or mutual funds, created, sold, advised, and managed with other funds as part of a fund family or complex by Defendant and its affiliates (the "Oakmark Complex" or the "Fund Complex"). Defendant and its affiliates, as the underwriters, distributors, advisors, and control persons of the Funds, owe fiduciary and other duties to Plaintiffs and all shareholders of the funds in the Fund Complex.

6.    Plaintiffs and the other shareholders of the Funds pay Defendant and its affiliates, or other third parties, fees for providing pure investment advisory services and administrative services. For the pure investment advisory services, the Funds pay Defendant a fee based on a percentage of the net assets of each of the funds in the Fund Complex. The Funds pay separate fees for some or all of the administrative services provided to the Funds by Defendant's affiliates or other third parties.

7.    The pure investment advisory services Defendant provides to the Funds are identical to the investment advisory services Defendant provides to other clients, such as institutional clients, and entail identical costs. In fact, the costs of advisors, analysts, research data, the physical plant, and other aspects of Defendant's investment advisory services are shared between the mutual funds and the other clients.

8.    Despite the equivalence of the investment advisory services Defendant provides to the Funds and the other clients, the fees Defendant receives from the Funds for pure investment

---

[1] The Oakmark Global Fund and the Oakmark International Fund closed to new investors as of December 15, 2003, but was open-ended at the time of purchase.

2

advisory services are much higher than the fees Defendant or its affiliates receive from other clients for the identical services.

### Section 36(b) of the Investment Company Act of 1940

9.      In 1940, Congress enacted the Investment Company Act of 1940, 15 U.S.C. § 80a-1 et seq. (the "ICA "). The ICA was designed to regulate and curb abuses in the mutual fund industry and to create standards of care applicable to investment advisors such as Defendant. In the 1960s, it became clear to Congress that investment advisors to equity mutual funds were gouging those funds with excessive fees, particularly by not taking economies of scale into account. As a result, § 36(b), 15 U.S.C., § 80a-35(b), was added to the ICA in 1970, which created a federal cause of action for breach of fiduciary duty.

10.     Section 36(b) provides in pertinent part:

> [T]he investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment advisers, or an affiliated person of such investment advisor, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect to such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. . . .

11.     In the past decade, the assets managed by Defendant within the Fund Complex have grown dramatically. In 1993, the Fund Complex had $295.3 Million in average net assets. By 2003, the Fund Complex had exploded to over $11.7 Billion in average net assets, almost 40 times the assets in 1993. Meanwhile, advisory fees for the Fund Complex increased from $2.45

3

million (or 0.83% of assets) in 1993 to $107.3 million (or 0.91% of assets) in 2003.
Accordingly, despite the Fund Complex's dramatic growth, no economies of scale or incremental
savings were realized by the shareholders. Rather, fees actually grew as a percentage of assets.

12.     While the assets of the Fund Complex and the fees have grown dramatically in
size, the nature of the services rendered by Defendant has changed little, if at all. Indeed,
advances in computing and communication technologies in the past twenty years have resulted in
exponential efficiencies that have dramatically reduced the costs of servicing mutual funds in
ways Congress could not have imagined when it enacted ICA § 36(b). Nonetheless, the advisory
fees paid to Defendant have grown dramatically. As a result, the advisory fees paid to Defendant
(and accepted by Defendant in violation of its statutory fiduciary duties) are disproportionately
large in relationship to the services rendered to Plaintiffs.

13.     In addition, Defendant, in violation of its fiduciary duties to Plaintiffs, has
retained excess profits resulting from economies of scale. These economies of scale are a product
of the dramatic growth in assets managed by Defendant. As assets under management increase,
the cost of providing services to the assets does not increase at the same rate. In fact, with very
large funds, such as the Funds at issue here, the cost of servicing additional assets approaches
zero, resulting in tremendous economies of scale. Accordingly, any fees received in connection
with the additional assets represent almost pure profit. The excess profits resulting from these
economies of scale belong to Plaintiffs and the other shareholders of the Funds.

14.     The fees paid to Defendant are technically approved by the Funds' board of
directors.[2] A majority of the board is comprised of statutorily presumed "disinterested" directors

_____

[2] While the Funds at issue here are technically governed by a board of trustees rather than directors, the term
"directors" is used throughout the complaint and should be read as synonymous with "trustees," as it is under the ICA.

as that term is defined in § 10 of the ICA. Regardless of whether these presumably

"disinterested" directors meet the requirements of § 10 of the ICA, there is a lack of

conscientiousness by the directors in reviewing the advisory fees paid by the Funds. In addition,

even if statutorily disinterested, the directors are in all practical respects dominated and unduly

influenced by Defendant in reviewing the fees paid by Plaintiffs and the other shareholders of the

Funds. In particular, Defendant does not provide the directors with sufficient information for the

directors to fulfill their obligations, a factor supporting a finding that Defendant has breached its

fiduciary duties.

15.     Although the fees challenged in this lawsuit may appear to the Court to be very

small on a shareholder-by-shareholder basis, they cause a dramatic decrease in Plaintiffs'

investment returns over time. Arthur Levitt, past Chairman of the Securities and Exchange

Commission ("SEC"), was critical of what he called the "tyranny of compounding high costs":

> Instinct tells me that many investors would be shocked to know how seemingly
> small fees can over time, create such drastic erosion in returns. ... In the years
> ahead, what will mutual fund investors say if they realize too late their returns
> have fallen hard under the weight of compounding fees?

Arthur Levitt, Jr., Inaugural address: Costs Paid with Other People's Money, Address at

Fordham University School of Law (Nov. 3, 2000), in 6 Fordham J. Corp. & Fin. L. 261, 267

(2001).

### Nature of Claims

16.     In this action, Plaintiffs seeks to rescind the investment advisory agreements and

to recover for the Funds the total fees charged by Defendant or, alternatively, to recover for the

Funds the excess profits resulting from economies of scale wrongfully retained by Defendant and

_____

*See* 15 U.S.C., § 80a-2(a)(12).

to recover other excessive compensation received by, or improper payments wrongfully retained by, Defendant in breach of its fiduciary duty under the ICA § 36(b), 15 U.S.C. § 80a-35(b). Because the conduct complained of herein is continuing in nature, Plaintiffs seek recovery for a period commencing at the earliest date in light of any applicable statute of limitations through the date of final judgment after trial.

17. No pre-suit demand on the board of directors of the Funds is required, as the requirements of F.R.C.P. 23.1 do not apply to actions under § 36(b) of the ICA. *Daily Income Fund v. Fox*, 464 U.S. 523 (1984).

18. Plaintiffs do not allege or seek relief for any claims based upon improper market timing or late trading activity involving the Funds.

### III. PARTIES

19. Plaintiffs Jerry N. Jones and Mary Frances Jones are residents of Columbia, Missouri. They are shareholders at all relevant times of the Oakmark Equity and Income Fund and the Oakmark Global Fund.

20. Plaintiff Olga Menyhart is a resident of Tampa, Florida. She is a shareholder at all relevant times of the Oakmark Fund and the Oakmark International Fund.

21. Each of the Funds is a separate operating series of the Harris Associates Investment Trust, a Massachusetts business trust that is registered with the Securities and Exchange Commission under the Investment Company Act of 1940 as an open-end management investment company.

22. Defendant Harris Associates LP ("Harris") is a Delaware limited partnership and is registered as an investment adviser under the Investment Advisers Act of 1940. Harris is the

6

investment advisor to each of the Funds. Harris also serves as the investment advisor to

individuals and other institutions, including trusts, retirement plans, endowments and

foundations, and manages a number of private partnerships.

## IV. GENERAL ALLEGATIONS

23. The test for determining whether compensation paid to Defendant violates §36(b)

is "essentially whether the fee schedule represents a charge within the range of what would have

been negotiated at arm's-length in the light of all of the surrounding circumstances." *Gartenberg*

*v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923, 928 (2d Cir. 1982). In order to violate §

36(b), "the advisor-manager must charge a fee that is so disproportionately large that it bears no

reasonable relationship to the services rendered and could not have been the product of arm's-

length bargaining." *Id.*

24. In applying this test, all pertinent facts must be weighed in determining whether a

fee or other compensation violates § 36(b). The *Gartenberg* court specifically identified six

factors (a portion of "all pertinent facts") to be considered in determining whether a fee is so

disproportionately large that it bears no reasonable relationship to the services rendered. These

factors include: (1) the nature and quality of the services rendered; (2) the profitability of the

funds to the advisor/manager; (3) economies of scale; (4) comparative fee structures; (5) fallout

benefits (i.e. indirect profits to the advisor/manager resulting from the existence of the funds; and

(6) the care and conscientiousness of the directors. A review of these factors, and the facts in this

case, demonstrates that the fees charged by Defendant to the Funds violate § 36(b).

### (1) The Nature and Quality of the Services Provided to the Funds

25. The nature of the investment advisory services provided to the Funds is

7

straightforward:  Defendant buys and sells, at its discretion, stocks, bonds, and other securities

for the Funds.  This is precisely the same service provided to Defendant's institutional and other

clients (albeit at a dramatically lower cost).  On information and belief, the materials provided by

Defendant to the directors of the Funds establish that the nature of these services has remained

unchanged despite dramatic growth in the assets of the Funds and advisory revenues.

26.    Despite the fact that the Funds receive identical investment advisory services as

Defendant's institutional and other clients, on information and belief Plaintiffs pay Defendant

dramatically higher fees because these fees are not negotiated at arm's length as they are with the

institutional and other clients.  This disparity in fees evinces Defendant's willingness and

determination to prefer their own financial interests to the interests of the Funds and the

shareholders of the Funds.

27.    On information and belief, Defendant repeatedly puts its own financial interests

ahead of the interests of the Funds and the shareholders of the Funds by participating in

arrangements and schemes that benefit Defendant at the expense of the Funds and their

shareholders.  The cost of this conflict of interest, which does not exist in the case of the arm's-

length relationships with institutional clients, is manifest not only in higher fees, but in other

losses and expenses borne by the Funds and the shareholders of the Funds.  These losses and

expenses directly impact the quality of the investment advisory services Defendant provides to

the Funds.

### (2) The Profitability of the Fund to the Adviser/Manager

28.    "[T]he 'profitability of the fund to the adviser' [must] be studied in order that the

price paid by the fund to its adviser be equivalent to 'the product of arm's-length bargaining.'"

8

*See* John P. Freeman & Stewart L. Brown, *Mutual Fund Advisory Fees: The Cost of Conflicts of Interest*, 26 J. Corp L. 610, 661 (2001) (the "Freeman & Brown Study") (citing *Gartenberg*) [Ex. 1]. The profitability of a fund to an adviser-manager is a function of revenues minus the costs of providing services. However, upon information and belief, Defendant's reporting of its revenues and costs is intended to, and does, obfuscate Defendant's true profitability. For instance, upon information and belief, Defendant employs inaccurate accounting practices in its financial reporting, including arbitrary and unreasonable cost allocations.

29.     Defendant's true profitability can be determined on either an incremental basis or a full-cost basis. Defendant's incremental cost of providing advisory services to Plaintiffs is nominal while the additional fees received by Defendant are hugely disproportionate given that the nature, quality, and level of the services remain the same. On information and belief, a review of Defendant's full costs of providing advisory services will also demonstrate the enormous profitability to Defendant of managing the Funds.

### (3) Economies of Scale

30.     The existence of economies of scale in the mutual fund industry has been recently confirmed by both the SEC and the Governmental Accounting Office (the "GAO"). Both conducted in-depth studies of mutual fund fees in 2000, and both concluded that economies of scale exist in the provision of advisory services. *See* SEC Division of Investment Management: Report on Mutual Fund Fees and Expenses (Dec. 2000) ("SEC Report"), at 30-31 [Ex. 2]; GAO, Report on Mutual Fund Fees to the Chairman, Subcommittee on Finance and Hazardous Materials; and the Ranking Member, Committee on Commerce, House of Representatives (June 2000) ("GAO Report"), at 9 [Ex. 3].

9

31.     In addition, the most significant academic research undertaken since the Wharton

School study in the 1960s establishes the existence of economies of scale that are not being

passed along to mutual fund shareholders in violation of Defendant's duty to do so under § 36(b).

*See* Freeman & Brown Study" [Ex. 1].  As the Freeman & Brown Study noted:  "The existence

of economies of scale has been admitted in SEC filings made by fund managers and is implicit in

the industry's frequent use of fee rates that decrease as assets under management increase.  Fund

industry investment managers are prone to cite economies of scale as justification for business

combinations."  Id. at 620 [Ex. 1].

32.     These economies of scale exist not only fund by fund but also exist with respect to

an entire fund complex and even with respect to an investment advisor's entire scope of

operations, including services provided to institutional and other clients.  *See* Freeman & Brown

Study at 621 n.62 (quoting Victoria E. Schonfeld & Thomas M.J. Kerwin, Organization of a

Mutual Fund, 49 Bus. Law 107 (1993)) [Ex. 1].

33.     The clearest example of economies of scale occurs when total assets under

management increase due purely to market forces (without the institution of new advisory

relationships or new asset gathering).  In such instances, as the GAO confirms, it is possible for

the advisor to service the additional assets with zero additional costs.  See GAO Report at 9

(noting that growth from portfolio appreciation is unaccompanied by costs) [Ex. 3].  In other

words, an investment advisor can advise a fund that doubles in size purely because of market

forces with no increased costs because the services are unchanged.  *See* GAO Report at 9 [Ex. 3];

Freeman & Brown Study at 619 n.43, 621 (noting that investment advisors have benefited by

garnering "increased fees from the general increase in market prices with no commensurate

efforts on their part" and also noting that as much as 64% of mutual fund asset growth has come

from appreciation of portfolio securities, which, unlike growth from share sales to new investors,

is costless) [Ex. 1].

34.     From 1993 through 2003, the assets under management in the Oakmark Complex

grew from $295.3 million to nearly $11.7 billion.  However, this phenomenal growth in mutual

fund assets not only produced no economies of scale, but fees actually increased faster than the

growth in assets.  Fees went from $2.45 million (or 0.83% of assets) in 1993 to $107.3 million

(or 0.91% of assets) in 2003.

35.     The economies of scale enjoyed by Defendant with respect to the Funds have not

been shared with Plaintiffs as required by § 36(b).  As a result, the fees paid to Defendant for

advisory services provided to the Funds are grossly disproportionate to those services, are

excessive, and violate § 36(b).

### (4) Comparative Fee Structures

36.     The fees advisors receive from mutual funds for investment advisory services are

directly comparable to, though much higher than, the fees advisors receive from other clients for

the identical services.  As the Freeman & Brown Study noted:  "None of the leading advisory fee

cases involved equity funds, and hence, none of the courts were confronted directly with the

strong analogies that can be drawn between equity advisory services in the fund industry as

compared to the pension field where prices are notably lower."  Freeman & Brown Study at 653

[Ex. 1].  While a "manager may encounter different levels of fixed and variable research costs

depending on the type of the portfolio, . . . the fundamental management process is essentially

the same for large and small portfolios, as well as for pension funds and mutual funds.  The

11

portfolio owner's identity (pension fund versus mutual fund) should not logically provide a reason for portfolio management costs being higher or lower." Freeman & Brown Study at 627-28 [Ex. 1]. Indeed, "a mutual fund, as an entity, actually is an institutional investor. When it comes to fee discrepancies, the difference between funds and other institutional investors does not turn on 'institutional status,' it turns on self-dealing and conflict of interest." Freeman & Brown Study at 629 n.93 [Ex. 1]. Accordingly, the "'apples-to-apples' fee comparisons between equity pension managers and equity fund managers can be most difficult and embarrassing for those selling advice to mutual funds." Freeman & Brown Study at 671-72 [Ex. 1].

37.    More recently, New York's Attorney General surveyed two fund complexes and confirmed the existence of massive over-charging of fund advisory fees. Specifically, Mr. Spitzer testified before a Senate Subcommittee on January 27, 2004, as follows:

> Putnam's mutual fund investors were charged 40 percent more for advisory services than Putnam's institutional investors. In dollar terms, what this fee disparity means is that in 2002 Putnam mutual fund investors paid $290 million more in advisory fees than they would have paid had they been charged the rate given to Putnam's institutional clients, and these are for identical services.
>
> There was a similar disparity in the advisory fees charged by Alliance. Once again, mutual fund investors were charged significantly higher advisory fees than institutional investors. Specifically, Alliance's mutual fund investors paid advisory fees that were twice those paid by institutional investors. In dollar terms, this means that Alliance investors paid more than $200 million more in advisory fees than they would have paid had they been charged the rate given to Alliance's institutional clients.

38.    On information and belief, the shareholders of the Funds at issue here are plagued by the same discriminatory over-charging. Indeed, a number of relevant comparative fee structures clearly establish that Defendant is charging advisory fees to the Funds that are

12

disproportionate to the value of the services rendered. For example, upon information and belief:

      a. Harris serves as the subadvisor to the CDC Nvest Growth and Income Fund. For its services, Harris receives a fee equal to 45 basis points (.45%) of the first $250 Million in assets, 40 basis points (.40%) of the next $250 Million in assets, and 35 basis points (.35%) of assets over $500 Million (the "Nvest G&I Fee Schedule"). By way of contrast, for its services to the Oakmark Equity and Income Fund, Harris receives a fee equal to 75 basis points (.75%) of the first $5 Billion in assets, 70 basis points (.70%) of the next $2.5 Billion in assets, 675 basis points (.675%) of the next $2.5 Billion in assets, and 65 basis points (.65%) of assets over $10 Billion. As of June 2004, the Oakmark Equity and Income Fund had over $7.727 Billion in assets. If the Oakmark Equity and Income Fund were to have average assets of this amount throughout 2004, it would pay a blended fee of 73.2 basis points (.732%). However, if the Oakmark Equity and Income Fund benefited from the Nvest G&I Fee Schedule, the Oakmark Equity and Income Fund would pay a blended fee of only 35.5 basis points (.355%). Under this fee schedule, the Oakmark Equity and Income Fund would pay less than half of what it will pay under its current schedule, which would save the shareholders of the Oakmark Equity and Income Fund over $29 million in fees this year.

      b. Harris serves as the subadvisor to the MassMutual Focused Value Fund (a mid-cap fund). For its services, Harris receives a fee equal to 50 basis points (.50%) of the first $100 Million in assets, 45 basis points (.45%) of the next $400 Million in assets, and 40 basis points (.40%) of assets over $500 Million (the "MassMutual Focused

Value Fee Schedule"). By way of contrast, for its services to the Oakmark Select

Fund (also a mid-cap fund), Harris receives a fee equal to 100 basis points (1.00%) of

the first $1 Billion in assets, 95 basis points (.95%) of the next $500 Million in assets,

90 basis points (.90%) of the next $500 Million in assets, 85 basis points (.85%) of

the next $500 Million in assets, 80 basis points (.80%) of the next $2.5 Billion in

assets, and 75 basis points (.75%) of assets over $5 Billion. As of June 2004, the

Oakmark Select Fund had over $5.623 Billion in assets. If the Oakmark Select Fund

were to have average assets of this amount throughout 2004, it would pay a blended

fee of 85.7 basis points (.857%). However, if the Oakmark Select Fund benefited

from the MassMutual Focused Value Fee Schedule, the Oakmark Select Fund would

pay a blended fee of only 40.5 basis points (.405%). Under this fee schedule, the

Oakmark Select Fund would pay less than half of what it will pay under its current

schedule, which would save the shareholders of the Oakmark Select Fund over $25

million in fees this year.

c.  Harris serves as the subadvisor to the MassMutual Overseas Fund. For its

services, Harris receives a fee equal to 65 basis points (.65%) of the first $50 Million

in assets, 60 basis points (.60%) of the next $50 Million in assets, and 50 basis points

(.50%) of assets over $100 Million (the "MassMutual Overseas Fee Schedule"). By

way of contrast, for its services to the Oakmark International Fund, Harris receives a

fee equal to 100 basis points (1.00%) of the first $2 Billion in assets, 95 basis points

(.95%) of the next $1 Billion in assets, and 85 basis points (.85%) of assets over $3

Billion. As of June 2004, the Oakmark International Fund had over $4.231 Billion in

14

assets. If the Oakmark International Fund were to have average assets of this amount throughout 2004, it would pay a blended fee of 94.5 basis points (.945%). However, if the Oakmark International Fund benefited from the MassMutual Overseas Fee Schedule, the Oakmark International Fund would pay a blended fee of only 50.3 basis points (.503%). Under this fee schedule, the Oakmark International Fund would pay slightly more than half of what it will pay under its current schedule, which would save the shareholders of the Oakmark International Fund over $18 million in fees this year.

### (5) Fallout Benefits

39. Defendant indirectly profits because of the existence of the Funds through fallout benefits. Obvious, but difficult to quantify fallout benefits include the attraction of new customers, cross selling related funds to current customers, and other benefits associated generally with the development of goodwill and the growth in assets of the Funds.

40. Other, easier to quantify, benefits include "soft dollars" payable from broker-dealers. Essentially, "soft dollars" are credits furnished to Defendant from broker-dealers and other securities-industry firms in exchange for routing the Funds' securities transaction orders and other business to paying firms. These soft-dollar credits should be used to purchase research and other goods or services that benefit the shareholders of the Funds. On information and belief, however, the soft-dollar arrangements benefit Defendant and result in increased costs to the shareholders of the Funds with little to no corresponding benefits to the shareholders of the Funds. On information and belief, the soft dollar arrangements are concealed from the shareholders of the Funds in breach of Defendant's fiduciary duty.

41.     On information and belief, Defendant also receives "kickbacks," either directly or indirectly, as transfer agency and custodian fees grow due to increases in the assets of the Funds and the number of shareholders.

42.     On information and belief, Defendant receives further fallout benefits from securities lending arrangements.  Essentially, Defendant loans out the securities of the Funds and receives compensation as the lending agent of the Funds.

43.     A highly profitable fallout benefit to Defendant is the ability to sell investment advisory services paid for by the Funds at virtually no additional cost.  Much like computer software, once the investment research and resulting recommendations are paid for, that research and those recommendations may be sold to other clients at virtually no cost whatsoever to Defendant.  Without payment by Plaintiffs and other shareholders of the Funds of millions of dollars in advisory fees, Defendant would have to pay to conduct that research independently in order to provide investment advisory services to other clients, including institutional clients.  This is a natural byproduct of the extraordinary economies of scale inherent in the investment advisory business.  However, although Plaintiffs and other shareholders of the Funds pay all of the costs associated with the investment advisory services, Defendant resells these services to third parties without compensating shareholders through reduced fees or in any other way.

44.     On information and belief, Defendant does not provide sufficient information regarding the existence and extent of these and other fallout benefits to the shareholders of the Funds or to the Funds' directors.  The directors are thus unable to quantify or even meaningfully consider the benefits.  Plaintiffs and other shareholders of the Funds have paid for these benefits and are entitled to compensation in the form of reduced advisory fees.

16

### (6) The Independence and Conscientiousness of the Directors

45.    At least 40% of the Funds' directors must be "disinterested" as defined in § 10 of

the ICA. As the GAO Report noted, the structure of most mutual funds embodies a potential

conflict of interest between the fund's shareholders and its adviser. This conflict arises because

the fees paid by the shareholders represent revenue to the adviser. The United States Supreme

Court has stated that the disinterested-director requirement is "the cornerstone of the ICA's

efforts to control" this conflict of interest. *Burks v. Lasker*, 441 U.S. 471 (1979).

46.    The disinterested directors are supposed to serve as "watchdogs" for the

shareholders of the Funds. As such, the disinterested directors have primary responsibility for,

among many other things, negotiating and approving all contracts and agreements with

Defendant and reviewing the reasonableness of the advisory fees received by Defendant.

Accordingly, as noted by the GAO, the directors are expected to review, among other things, the

advisor's costs, whether fees have been reduced when the Funds' assets have grown, and the fees

charged for similar services. See GAO Report at 14 [Ex. 3]. These responsibilities are intensive,

requiring the directors to rely on information provided by Defendant. Defendant, in turn, has a

fiduciary duty to provide all information reasonably necessary for the directors to perform their

obligations. *See* 15 U.S.C., § 80a-15(c).

47.    The ICA contains a presumption that the disinterested directors are in fact

disinterested. However, the lack of conscientiousness of even disinterested directors in

reviewing the fees paid by the Funds, the lack of adequate information provided to the directors

in connection with their approvals of the advisory agreements, and the control of management

over the directors in reviewing the fees paid by the Funds are not presumed but, rather, are

important factors recognized in the *Gartenberg* line of cases in determining whether Defendant

has breached its fiduciary duties. In addition, the SEC has specifically recognized that even

disinterested directors may not be independent but, rather, may be subject to domination or

undue influence by a fund's investment adviser.

48. Two noteworthy industry insiders have commented on the general failure of

mutual fund boards to fulfill their responsibilities under the ICA. Jack Bogle, founder of the

Vanguard Group, made the following comment:

> Well, fund directors are, or at least to a very major extent, sort of a
> bad joke. They've watched industry fees go up year after year,
> they've added 12b-1 fees. I think they've forgotten, maybe they've
> never been told, that the law, the Investment Company Act, says
> they're required to put the interest of the fund shareholders ahead of
> the interest of the fund adviser. It's simply impossible for me to see
> how they could have ever measured up to that mandate, or are
> measuring up to it.

Warren Buffet, famous investor and chairman of Berkshire Hathaway, Inc., made the following

comment, which was recently quoted by a United States District Court:

> I think independent directors have been anything but independent.
> The Investment Company Act, in 1940, made these provisions for
> independent directors on the theory that they would be the watchdogs
> for all these people pooling their money. The behavior of
> independent directors in aggregate since 1940 has been to rubber
> stamp every deal that's come along from management—whether
> management was good, bad, or indifferent. Not negotiate for fee
> reductions and so on. A long time ago, an attorney said that in
> selecting directors, the management companies were looking for
> Cocker Spaniels and not Dobermans. I'd say they found a lot of
> Cocker Spaniels out there. *Strougo v. BEA Assoc.*, 188 F. Supp.2d
> 373, 383 (S.D.N.Y. 2002) (citation omitted).

Mr. Buffet also stated, in a letter to shareholders in the 2002 Berkshire Hathaway, Inc. annual report:

> [A] monkey will type out a Shakespeare play before an "independent"
> mutual-fund director will suggest that his fund look at other managers,

18

even if the incumbent manager has persistently delivered substandard
performance. When they are handling their own money, of course,
directors will look to alternative advisors – but it never enters their
minds to do so when they are acting as fiduciaries for others. . . .
Investment company directors have failed as well in negotiating
management fees . . . . If you or I were empowered, I can assure you
that we could easily negotiate materially lower management fees with
the incumbent managers of most mutual funds. And, believe me, if
directors were promised a portion of any fee savings they realized, the
skies would be filled with falling fees. Under the current system,
though, reductions mean nothing to "independent" directors while
meaning everything to managers. So guess who wins? . . . [I]n
stepping up to [their] all-important responsibilities, tens of thousands
of "independent" directors, over more than six decades, have failed
miserably. (They've succeeded, however, in taking care of themselves;
their fees from serving on multiple boards of a single "family" of funds
often run well into six figures.) 2002 Berkshire Hathaway, Inc.
Annual Report to Shareholders, p. 17 – 18.

49.     As part of their scheme to receive excessive fees, Defendant did not keep the

directors fully informed regarding all material facts and aspects of its fees and other

compensation, and the directors failed to insist upon adequate information. For example:

a.     On information and belief, Defendant provided virtually no information to

the directors regarding the advisory fees charged to pension and other institutional

clients or to other mutual funds being advised or sub-advised by Defendant.

b.     On information and belief, Defendant provided virtually no information to

the directors regarding the economies of scale enjoyed or fallout benefits received by

Defendant.

c.     On information and belief, the profitability data given to the board of

directors provide no explanation as to how the board should evaluate economies of

scale.

d.     On information and belief, the directors rarely, if ever, question any

19

information or recommendations provided by Defendant.

50.    The foregoing assures that the directors do not understand Defendant's true cost

structure and, in particular, the economies of scale enjoyed by Defendant in providing investment

advisory services to the Funds and its institutional and other clients.

51.    On information and belief, the disinterested directors of the Funds have not

received the benefit of any measures to enhance their ability to act independently, which has

caused the directors to be dependent on Defendant and has allowed Defendant to dominate and

unduly influence the directors.  In addition, the directors' failure to insist on adequate

information evinces a lack of care and conscientiousness on their part.

### COUNT I
### ICA §36(b)
### BREACH OF FIDUCIARY DUTY
### (Excessive Investment Advisory Fees)

52.    Plaintiffs repeat and re-allege each allegation contained in the foregoing

paragraphs of this Complaint as if fully set forth herein.

53.    The fees charged by Defendant for providing advisory services to the Funds are

and continue to be disproportionate to the services rendered and are not within the range of what

would have been negotiated at arm's length in light of all the surrounding circumstances,

including the advisory fees that Defendant charges its other clients.

54.    In charging and receiving excessive or inappropriate compensation, and in failing

to put the interests of Plaintiffs and the other shareholders of the Funds ahead of its own

interests, Defendant has breached and continues to breach its statutory fiduciary duty to Plaintiffs

in violation of ICA § 36(b).

55.    Plaintiffs seek, pursuant to § 36(b)(3) of the ICA, the "actual damages resulting

from the breach of fiduciary duty" by Defendant, up to and including, "the amount of compensation or payments received from" the Funds.

**COUNT II**
**ICA § 36(b)**
**BREACH OF FIDUCIARY DUTY**
**(Excess Profits from Economies of Scale)**

56.     Plaintiffs repeat and re-allege each allegation contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

57.     Defendant has received and continues to receive excess profits attributable to extraordinary economies of scale.

58.     By retaining excess profits derived from economies of scale, Defendant has breached and continues to breach its statutory fiduciary duty to Plaintiffs in violation of ICA § 36(b).

59.     Plaintiffs seek, pursuant to § 36(b)(3) of the ICA, the "actual damages resulting from the breach of fiduciary duty" by Defendant, up to and including, the "amount of compensation or payments received from" the Funds.

WHEREFORE, Plaintiffs demand judgment as follows:

a.     An order declaring that Defendant has violated and continues to violate § 36(b) of the ICA and that any advisory agreements entered into are void ab initio;

b.     An order preliminarily and permanently enjoining Defendant from further violations of the ICA;

c.     An order awarding damages against Defendant including all fees paid to them by Plaintiffs and the Funds for all periods not precluded by any applicable statute of limitation through the trial of this case, together with interest, costs, disbursements,

21

attorneys' fees, and such other items as may be allowed to the maximum extent permitted

by law; and

    d.        Such other and further relief as may be proper and just.

Dated: 8-16-04

                                    By: _s/ Wm. Dirk Vandever_____
                                    Wm. Dirk Vandever, Esq.
                                    THE POPHAM LAW FIRM, P.C.
                                    323 W. 8th Street
                                    Suite 200
                                    Kansas City, Missouri 64105
                                    (816) 221-2288
                                    Fax: (816) 221-3999

                                    Guy M. Burns,
                                    Jonathan S. Coleman,
                                    Becky Ferrell-Anton,
                                    JOHNSON, POPE, BOKOR
                                    RUPPEL & BURNS, L.L.P.
                                    100 North Tampa Street, Ste. 1800
                                    Tampa, FL 33602
                                    (813) 225-2500
                                    Fax: (813) 223-7118

                                    Michael J. Brickman
                                    James C. Bradley
                                    Nina H. Fields
                                    RICHARDSON, PATRICK,
                                    WESTBROOK & BRICKMAN, LLC
                                    174 East Bay Street
                                    Charleston, SC 29401
                                    (843) 727-6500
                                    Fax: (843) 727-3103

                                    *Attorneys for Plaintiffs*

22

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**1. (a) PLAINTIFFS**

Jerry Jones, Mary Frances Jones and Olga Menyhart

**DEFENDANTS**

Harris Associates, L.P.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Boone
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE.   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(C) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Wm. Dirk Vandever
The Popham Law Firm, P.C.
323 W. 8th St., Ste. 200
Kansas City, MO  64105  (816) 221-2288

ATTORNEYS (IF KNOWN)

04-4184-CV- C.NKL

**II. BASIS OF JURISDICTION** *(PLACE AN "X" IN ONE BOX ONLY)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(PLACE AN -X- IN ONE BOX ONLY)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW(405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS -Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** *(PLACE AN "X" IN ONE BOX ONLY)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
Appeal to District Judge from ☐ 7 Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES IN DIVERSITY.)

Securities Action Pursuant to 15 U.S.C. §80a-35(b)

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**  $100,000.00+

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ YES   ☒ NO

**VIII. RELATED CASE(S)** (See instructions):   JUDGE _____   DOCKET NUMBER _____
IF ANY

DATE  8/16/04

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

JERRY N. JONES, MARY FRANCES )
JONES, and OLGA MENYHART, )
            )
         Plaintiffs, )
            )      Case No. 04-4184-CV-C-NKL
         v. )
            )
HARRIS ASSOCIATES L.P., )
            )
         Defendant. )

## NOTICE REGARDING EXHIBIT ATTACHMENT

Ex. 1, 2 and 3 are attachments to the above-styled Complaint in paper form only and are being maintained in the case file in the Clerk's office.

By:_____ s/ Wm. Dirk Vandever_____
        Wm. Dirk Vandever, Esq. (#24463)
        Dennis Egan, Esq. (#27449)
The Popham Law Firm, P.C.,
323 W. 8th Street
Suite 200
Kansas City, Missouri 64105
Tel: 816-221-2288
Fax: 816-221-3999

Guy M. Burns, FBN 160901
Jonathan S. Coleman, FBN 797480
Becky Ferrell-Anton, FBN 449342
JOHNSON, POPE, BOKOR
RUPPEL & BURNS, L.L.P.
100 North Tampa Street, Ste. 1800
Tampa, FL 33602
(813) 225-2500
Fax: (813) 223-7118

Michael J. Brickman
James C. Bradley
Nina H. Fields
Richardson, Patrick,
Westbrook & Brickman LLC
174 East Bay Street
Charleston, SC 29401
(843) 727-6500
Fax: (843) 727-3103

*Attorneys for Plaintiff*

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**

*Jones et al*

**DEFENDANTS**

*Harris Associates L*

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

**04C 8305**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

DOCKETED
DEC 3 0 2004

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ATTORNEYS (IF KNOWN)

JUDGE KOCORAS

MAGISTRATE JUDGE

## I. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☒ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☒ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

# FILED

DEC 2 8 2004

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint

JURY DEMAND: ☐ YES ☐ NO

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## VIII. This case
☐ is not a refiling of a previously dismissed action.
☐ is a refiling of case number_____, previously dismissed by Judge _____

DATE
*12/28/4*

SIGNATURE OF ATTORNEY OF RECORD
*CAME IN MAIL*

*37-2*