UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY N. JONES, MARY FRANCES JONES, and ARLINE WINNERMAN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 04 C 8305 |
| HARRIS ASSOCIATES, L.P., | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Defendant, Harris Associates L.P. ("Harris"), motion to exclude Plaintiffs', Jerry N. Jones, Mary Frances Jones, and Arline Winnerman (collectively referred to as "Plaintiffs"), proposed expert testimony. For the reasons set forth below, Defendant's motion is granted in part and denied in part, without prejudice.

**BACKGROUND**

The following factual recitation is derived from the allegations of the complaint, as well as the subsequent filings submitted by the parties. Plaintiffs are shareholders in four open-end registered investment companies managed by Harris: the Oakmark Fund, the Oakmark Equity and Income Fund, the Oakmark Global Fund, and the

Oakmark International Fund ("the funds"). The funds are part of a larger group of funds ("the fund complex"). Harris provides investment advisory services and administrative services for the fund complex. For the advisory services, each fund pays Harris a fee that is based upon a percentage of the net assets of the fund. The administrative services are subject to a separate fee.

According to the complaint, Harris exacts fees from the funds that are much higher than the fees charged to other clients for the same service. Plaintiffs contend that doing so breaches the fiduciary duty imposed on Harris with respect to the compensation they receive from the fund complex, in violation of 18 U.S.C. § 80a-35(b). In 2003, Plaintiffs state that the fund complex paid approximately $104.8 million more than it paid in 1993 for the same services from Harris, an almost 43-fold increase. According to Plaintiffs, Harris charges lower fees to other clients for services identical to those rendered to the funds. Plaintiffs also claim that technological improvements within the industry and savings from economies of scale allow Harris to render the services in question at a significantly lower cost than was previously possible, making the gap between the value of Harris's services and the price paid by the fund complex even greater. Finally, the complaint contains allegations regarding the mutual fund industry as a whole.

The instant action was initially filed by Plaintiffs on August 16, 2004, in the Western District of Missouri. On December 28, 2004, Judge Laughrey of the Western District of Missouri transferred the suit to our court at Harris's request. Subsequently, Plaintiffs disclosed to Harris the identity of six expert witnesses, four of whom form the basis of the present motion: Mercer Bullard ("Bullard"), Tamar Frankel ("Frankel") and Lyman Johnson ("Johnson") (collectively referred to as "Legal Experts") were provided as legal experts and James Lamb ("Lamb") was provided as an Accounting expert. On March 13, 2006, Harris filed the instant motion now before the court to exclude the opinions of the four purported experts.

## LEGAL STANDARDS

The admission of expert testimony is governed by Fed. R. Evid. 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In addition, expert testimony must be both relevant and reliable to be admitted. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 113 S. Ct. 2786 (1993). It may be based upon the personal knowledge or experience of the expert. See Kumho

Tire Co. v. Carmichael, 526 U.S. 137, 150, 119 S. Ct. 1167 (1999). The key to evaluating expert testimony that is based on the expert's personal experience is determining whether the expert employs "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho, 526 U.S. at 152, 119 S. Ct. 1167. Because expert testimony can be powerful and misleading, judges must act as gatekeepers and exclude expert testimony where the possible prejudice of the testimony outweighs its probative force. Daubert, 509 U.S. at 595, 113 S. Ct. 2786. In addition, the Federal Rules of Evidence prohibit experts from offering legal conclusions on issues that will determine the outcome of the case. See Bammerlin v. Navistar Int'l Transp. Corp., 30 F.3d 898, 900 (7th Cir. 1994); Harbor Ins. Co. v. Cont'l Bank Corp., 922 F.2d 357, 366-367 (7th Cir. 1990).

## **DISCUSSION**

Harris does not contest the qualifications of the purported experts, but instead takes issue with their testimonies and opinions on two grounds. First, Harris contends that the legal experts only provide opinions or legal conclusions on issues that will determine the outcome of the case and, therefore, should be excluded. Second, Harris asserts that Lamb's opinion should be excluded because it is not based on reliable methodology within his area of purported expertise. We address each of Harris' arguments in turn.

There is no doubt that each of the proffered legal experts are accomplished in their respective areas of business and securities laws. The legal experts are almost exclusively presented so that their opinions regarding Harris's alleged breach of its fiduciary duty would be heard with respect to: 1) the fees that it and its affiliates received from the funds, and 2) purported irreconcilable conflicts of interests between alleged disinterested trustees of the funds. As previously mentioned, the primary issue in the instant action centers around Harris's alleged breach of its fiduciary duty pertaining to the fund management. Plaintiffs argue that each of the legal experts opine on the general current status of the relevant business and securities law and, therefore, the testimony should be permitted. Although it is evident that a portion of the testimony is on the general status of the applicable law, it is also apparent that the Legal Experts also opine on the issue of Harris's alleged misfeasance. We are unsure as to where the general discussion of the law stops, where submitted legal conclusions begin and whether they are divisible. As such, we believe it would be more prudent to withhold our decision on the issue of whether the legal experts' testimonies should be excluded until after a formal Daubert hearing.

Next, Harris contends that Lamb's testimony and opinion should be excluded. Lamb's proffered opinion is presented in two distinct parts: 1) a damages calculation and 2) an internal cost allocation procedures criticism. Harris contends that Lamb's

damages calculation should be excluded because his opinions are not based on a reliable methodology within his area of expertise. Further, Harris submits that Lamb's internal cost allocation procedures criticism should be excluded because it is not based upon any analysis of what relevant impact those procedures had in giving rise to the instant action.

     First, Lamb calculated the alleged damages to the funds by subtracting from the funds' advisory fees the amount of fees paid to Harris by other types of clients for what he purports were "similar services." In analyzing the fees paid to Harris by the other clients, Lamb assumed that the services provided by Harris were virtually the same as those it provides to the funds, and thus that the difference in the fees for such services reflects the excessive portion of the fund fees. However, Lamb admits that the decision to use the similar services formula, as opposed to a more subjective formula, was at Plaintiffs' counsel's direction and his own interpretation of advisory contracts. Lamb testified that he had no experience qualifying him as an expert of interpreting such contracts. Further, based upon the fact that counsel advised Lamb as to the utilization of the alleged similar services in his calculations, it is evident that said calculation was not based on a reliable methodology within his purported expertise. Consequently, Lamb's damages calculation is excluded.

Second, Lamb also opines as to the inadequacy of Harris's internal cost allocation procedures. In so doing, Lamb insists that Harris should have utilized an "activity-based" cost accounting methodology because it is "common knowledge" that the allocation by revenues method, employed by Harris, leads to an over-allocation to larger volume services. However, Lamb fails to present any evidence that the utilization of his proffered method is common knowledge. Further, in rendering his criticism, Lamb failed to measure the amount of supposed distortion caused by Harris's method of cost allocation compared to his proffered method. Lamb fails to opine on any actual distortion that occurred by way of Harris' cost allocation and, therefore, only offers a conclusory opinion on the matter. Consequently Lamb's opinion as to Harris's cost allocation procedures is excluded.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion to exclude the expert testimony is denied without prejudice, pending the outcome of a Daubert hearing, as to the testimonies of the legal experts and granted as to the testimony of James Lamb.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated:   April 14, 2006